REVENGE, The (DIAS v.). See Case No. 3,877.

## Case No. 11,711.

### REVENS v. LEWIS et al.

[2 Paine, 202.] [1]

Circuit Court, S. D. New York. April Term, 1835.

SHIPPING—OWNERS—PART OWNER IN CONTROL—LIEN FOR REPAIRS—MASTER'S WAGES—ADMIRALTY JURISDICTION.

1. The owners of a vessel are tenants in common, each having a distinct, though an undivided, interest. They are not considered as partners, unless some special agreement has been entered into constituting them such. The general principle by which their rights are to be governed is, that a majority in amount of interest have a right to govern and control the employment of the vessel, and give directions as to her repairs and supplies, and all matters relating to such employment.

[Cited in Mitchell v. Chambers, 43 Mich. 160, 5 N. W. 57.]

2. Where one of the part owners is the master or ship's husband, in the absence of all special agreement on the subject, he is presumed to have authority to do everything necessary to be done for the employment of the vessel, and has authority to make repairs, and bind the vessel for the same. But, as this is only an implied authority, it must cease when it is revoked, or anything is done to rebut the presumption.

[Cited in The Brothers, 7 Fed. 880.]

3. Although, when repairs to a vessel are made by order of the master, who is owner of a small part, without the knowledge of the other owners, there may be a lien on the whole vessel for the repairs, so far as the rights of third persons are concerned who are ignorant of any difficulty between the owners in relation to such repairs, yet no such right exists as between the owners themselves. As between them, although the master may subject his own part to any lien for repairs he please, he will have no right to subject the interest of the other part owners to expense when forbidden so to do.

4. The rule is well settled that the wages of the master are not a lien on the ship, and that he cannot maintain a suit in rem to recover them.

5. Whenever any collision arises between the owners of a vessel, it falls within the admiralty jurisdiction of the district court to interfere, so as to protect the rights of all.

This was an appeal from a decree of the district court of the United States for the Southern district of New York.

On the 5th of April, 1834, Oakley & Roome, of the city of New York, and John C. Graves, of the same place, were registered owners of the brig Emolument, of New York, Oakley & Roome owning three-quarters, and Graves one-quarter, and commanding the brig. On the same 5th of April, Oakley & Roome sold their three-quarters to Lewis & Thomson, of Philadelphia, Graves then sustaining the character of master and ship's husband, as the only owner at New York. On the 1st of May, 1834, Graves sold his quarter of the brig to Thomas J. Revens, a ship-master, and appointed him captain, by an agreement whereby the said Revens was to command the brig on the following terms: He was to take her on shares, to victual and man her, to pay one-half of all the port charges, and

[1] [Reported by Elijah Paine, Jr., Esq.]

to receive one-half of the gross amount of earnings for his compensation. On the 21st of July, 1834, the vessel returned to New York without a cargo, and in distress; and on the same day, Lewis & Thomson appointed Wadsworth & Smith, of New York, their agents. On the 7th of August, 1834, the brig was libelled for wages and repairs by Revens and others, and having been sold, the proceeds were paid into court.

Upon the question whether Revens had a right to incur the expense of repairs, so as to bind the other part owners, his honor, Samuel R. Betts, district judge, decided: "That the said Thomas G. Revens assumed the command of the said vessel under a special agreement to receive certain shares of his earnings in payment for his services, and that the said agreement is not proved to have been rescinded or violated by the other owners, and that said Revens is not entitled to claim any other compensation for his services than the one stipulated by such agreement. That the acts of said Revens, in subjecting the said brig to liabilities for materials and repairs after her arrest in this cause, and after the discharge of said Revens as master by the other owners, and without their advice or assent, their known agent being present in port, and the said Revens having strong reasons to infer, if he did not well know, the disapproval of such repairs and expenses by the other part owners, removes, as between him and his joint owners, the equity of imposing a proportionate share of such expenditures upon their interests in said vessel or her proceeds, and justly subjects the said Revens to the payment of the whole." [Case unreported.]

From this decree Revens appealed.

THOMPSON, Circuit Justice. The principal question in this case is, whether Thomas Revens, who was one-quarter owner of the brig Emolument, and being in possession of the vessel, had, under the circumstances of the case, authority to incur the expenses of repairs put upon her, so as to bind the other part owners. Revens had been master of the brig, but before the repairs were put upon her by his directions, he had been discharged by the other part owners; and the evidence shows very satisfactorily that the repairs were made against their consent, of which Revens had full knowledge. The owners of a vessel are considered tenants in common, each having a distinct, though an undivided, interest.[2] They are not considered as partners, unless some special agreement has been

entered into, constituting them such; and the general principle by which their rights are to be governed is that a majority, in amount of interest, has a right to govern and control the employment of the vessel, and give directions as to her repairs and supplies, and all matters relating to such employment. Where one of the part owners is the master or ship's husband, in the absence of all special agreement on the subject, he is presumed to have

of the ship. This case was expressly overruled by Lord Eldon, in the case of Ex parte Young, 2 Ves. & B. 242; 2 Rose, 78, note, who held that a ship stood upon the nice distinction of a tenancy in common. He ruled again, in the case of Ex parte Harrison, 2 Rose, 76, that the owners of a ship were not interested in it as joint tenants, but as tenants in common, and that the bankrupt's share passes to the creditors under the bankruptcy, without being liable, specifically, by way of lien, to the claims of the other part owners, in respect of their disbursements and liabilities for the ship. So, also, in the case of Ex parte Gibson, 1 Mont. Partn. 102, note, it was held that a bankrupt's interest in the moiety of a vessel was his separate property, and not held by his assignees, for the purpose of paying the joint creditors of the ship.

This doctrine of a distinct separate property in a vessel between part owners, as tenants in common, seems to have had countenance from Lord Loughborough, in the case of Ex parte Parry, 5 Ves. 575, where one joint owner of a ship insured on his own account and became a bankrupt. It was held that though the cargo and proceeds of the voyage were joint property, the produce of the insurance on the ship which was lost was separate property. And perhaps we may say, with Sir Arthur Piggot, that it is the universal understanding in the commercial world, and especially among ship owners, that part owners of a ship are not partners. He said that the case of Doddington v. Hallet was never acted upon, and the English usage is doubtless our usage upon this point.

In Doddington v. Hallet, supra, the bill was founded on an agreement between the plaintiffs and one Hall, authorizing the latter to contract for the building of a ship, and for fitting out, managing, and victualling her, with an agreement to pay proportional shares according to their interests. The part owners claimed, against Hall's representatives, a specific lien upon what was due to Hall for his share, on account of the money the plaintiffs had paid to the tradesmen, in fitting, etc., the ship, and that the administrators should not run away with it as part of the general assets for all the creditors. Lord Hardwicke, after premising that the case stood as though Hall himself was before the court, no one having a specific lien on Hall's share in the ship, went on to say that it must be admitted that a ship might be a subject of partnership as well as anything else, the use and earnings thereof being a proper subject of trade. He said it was a partnership among them, and the ship itself to be part of the subject thereof, which was to be let to freight to the company, it being their method of trading. The foundation of this partnership stock was the ship itself, which must be employed, and the earnings and profits to arise. That undoubtedly all the persons subject to the agreement are liable in solido to the tradesmen who fitted it out, and the agreement for the proportional shares is as between themselves, which is the case of all partnerships. He said that if it had been agreed that a brew house should be part of the partnership stock (which often happened), the case of the brew house being used in the partnership trade, if workmen do work in the brew house every

---

[2] In Doddington v. Hallet, 1 Ves. Sr. 497, Lord Hardwicke held that part owners in a ship were to be considered partners and joint owners, though they were, in fact, the tenants in common; and that the distribution of the assets of one of them, being insolvent, was to be made as if joint property, and to be applied first to the joint debts, and to be treated as partnership property, chargeable with all debts for which either owner was liable on account

authority to do everything necessary to be done for the employment of the vessel, and has, of course, authority to make repairs, and bind the vessel for the same; but as this is only an implied or presumed authority, it must, like all other implied powers, cease when it is revoked, or anything is done to rebut the presumption. And whenever any collision arises between the owners, it falls within the admiralty jurisdiction

---

partner would be liable to that, and that brew house must be brought into the partnership account; and if more was due to one partner than another, all the share of the partnership stock, consisting of the lease of the brew house as well as the other effects, are liable to that account. He went on to observe that if the share of one partner had been assigned, if it stood on the head of general equity, he should be of opinion that if the purchaser had notice of the partnership, he would be subject to it; and he decreed for the plaintiffs.

Lord Hardwicke perfectly understood the distinction between a tenancy in common, such as owners of different shares in a ship have among themselves, and a joint tenancy, as between partners of the goods and stock in trade. He meant to decide, and did decide, that a subject which ordinarily may be held as a tenancy in common may, by the acts of the parties, become to be held in joint tenancy. And the facts of the agreement to build the ship at their joint expense, in proportion to their shares, and the agreement to fit her out, manage, and victual her for the service of the East India Company formed, in his judgment, such a community of interest as to constitute that a partnership transaction, in relation to those subjects, and thus a specific lien was acquired by those who contributed more than their shares, against the share of the one who contributed less than his proportion.

This case derives strong confirmation from the case of Smith v. De Silva, Cowp. 469, in which it was decided, upon an issue out of chancery, that the interest of part owners in a ship, and in the profits and loss of an adventure undertaken by their mutual consent, is not affected by the bankruptcy of one of them taking place after the commencement of the voyage, although he has not paid his full share of the outfit. Lord Mansfield, in giving the opinion of the court, held that if the other partners had been obliged to discharge the amount of the notes which remained unpaid at the time of the bankruptcy, the assignees must have allowed the other partners the full sum paid for the bankrupt, and would have come against them only for the balance due to him, if any. Mr. Abbott, in commenting upon this case, says it seems to have been considered that part owners of a ship might have a lien on each other's shares of a ship, as partners in trade have on each other's shares of their merchandise. And in the third edition of his treatise (page 94) he says: "It is true, indeed, that as long as the ship continues to be employed by the same persons, no one of them can be entitled to partake of the profits, until all that is due, in respect to the part he holds in the ship, has been discharged." And again, after citing the case of Doddington v. Hallet, without a word of disapprobation, on page 96, he says: "This usage, or course of trade, I apprehend to be to charge the assignee or purchaser in account for the outfit and other expenses incurred in respect of the voyage of which he is entitled, in consequence of his purchase, to share the profits, which can only be the voyage in prosecution at the time of the purchase; but not to carry back the charge as against him to the expense of any antecedent adventure, from which he can derive no profit."

of the district court to interfere, and so regulate the affair as shall protect and secure the rights of all: but, as between the owners themselves, it would be highly unjust to allow the master, who is only the owner of a small part, to subject the interest of the other part owners to any expense he might please when forbidden so to do. He might subject his own part to any lien he pleased for repairs; and perhaps, when the repairs are made by order of the master, without any knowledge of the owners, there might be a lien on the whole vessel for the repairs, so far as the rights of third persons were concerned who were ignorant of any difficulty between the owners in relation to such repairs. But no such right exists as between the owners themselves, and the interest of Lewis & Thomson in the vessel, under the circumstances of the case, was properly exonerated, and the expense of the repairs charged on the share of Revens, under the limitation contained in the decree of the district court. Capt. Revens has no claim on these proceeds for his wages. The rule is well settled that the wages of the master are not a lien on the ship, and that he cannot maintain a suit in rem to recover them; but. independent of this, the claim for wages was properly denied. By the agreement under which he purchased his quarter of the brig and took command of her, he was to take his compensation out of the earnings of the vessel. He took her upon shares, therefore, and not as a master, upon wages. See The Grand Turk [Case No. 5,683]; The Mary [Id. 9,186]; U. S. v. Hatch [Id. 15,325]; Murray v. Lazarus [Id. 9,962]; The Robert Fulton [Id. 11,890].

The decree of the district court is accordingly affirmed, with costs.